## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| XU FENG | : | CIVIL ACTION |
| | : | No. 16-664 |
| v. | : | |
| | : | |
| UNIVERSITY OF DELAWARE | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                         April 9, 2020

Presently before the Court is Defendant University of Delaware's renewed motion for summary judgment. For the reasons that follow, the Court will grant the motion.

1.   Plaintiff Xu Feng, a Chinese citizen living in China, enrolled in a graduate program (the "Program") at the University of Delaware. After three semesters (from summer 2014 through spring 2015), during which Plaintiff did not maintain the minimum required 2.0 GPA, Defendant expelled him for failing to meet its academic requirements.[1] Plaintiff claims that, by subjecting him to a higher credit hour requirement than students from the United States and terminating his enrollment when he could not keep up in his classes, Defendant discriminated

---

[1] After Plaintiff was expelled, his professors gave him a second chance and told him they would consider reinstating him if he met certain requirements including completing assignments from the previous semester. Plaintiff failed to timely meet these requirements and was not reinstated.

against him based on his national origin in violation of 42 U.S.C. § 2000d.

2. Students could attend the Program in person on the campus or through distance learning. Plaintiff elected to attend in person. To do so, he was required to obtain an F-1 student visa. To maintain the visa, Plaintiff was required by federal law to enroll in a "full course of study." 8 U.S.C. § 1101(a)(15)(f)(i). Defendant was required to define "full course of study." 8 C.F.R. § 214.2(f)(6)(i)(A). Over thirty years ago, and like many other schools around the country, Defendant defined "full course of study" as full-time enrollment, which is at least nine credit hours for a graduate program.[2]

3. Plaintiff asserts that requiring foreign students to take nine credits to attend classes on campus is discriminatory because students from the United States could attend the Program in person while being enrolled part time (because they did not require an F-1 visa).

4. Summary judgment should be granted when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). There is a genuine factual dispute when a reasonable jury could

---

[2] See Maintaining Your Immigration Status, Univ. of Del., http://www1.udel.edu/oiss/students/maintaining_your_status.html (last visited Apr. 9, 2020).

come to opposing conclusions. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). A dispute of fact is material when it "might affect the outcome of the suit under the governing law." Id. at 248. A movant is entitled to summary judgment if the non-movant has failed to sufficiently show an essential element of its case. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The Court views all facts in the light most favorable to the nonmoving party. See Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010).

    5.    Plaintiff first argues that the nine-credit requirement for F-1 visa students is facially discriminatory and Defendant's application of it to him is evidence of direct discrimination. He argues that the requirement treats all international students differently than domestic students who need not take nine credits to attend classes on campus. The Court rejects these arguments. In order to maintain an F-1 student visa, the foreign student is federally mandated to enroll in a full course of study. 8 U.S.C. § 1101(a)(15)(f)(i). Federal law also requires universities to define that term, 8 C.F.R. § 214.2(f)(6)(i)(A), which Defendant did long ago, as full-time enrollment, or nine credit hours for a graduate program. The definition of full-time enrollment does not change depending on the national origin of the student--it is equally applicable to all students and affects many domestic students

including those utilizing financial aid programs and fellowships.³ The fact that the federal government requires a full course of study in order to maintain an F-1 visa is not a policy into which Defendant has had any input. It is the federal government, not Defendant, who sets the requirements for such entry. Thus, there is simply no direct evidence of an intent to discriminate by Defendant. See Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 562 (3d Cir. 2002) ("To prove intentional discrimination by a facially neutral policy, a plaintiff must show that the relevant decisionmaker . . . adopted the policy at issue because of . . . its adverse effects upon an identifiable group." (internal quotation marks omitted) (citing Pers. Admn'r v. Feeney, 442 U.S. 256, 279 (1979)). The Court notes that Plaintiff could have completed the Program part-time via distance learning from China, but he apparently wanted the opportunity to be in the United States.

6. Plaintiff also argues that, even without evidence of direct discrimination, he can meet the McDonnell Douglas burden shifting test with indirect evidence of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

---

³ Plaintiff argues that the evidence shows that Defendant viewed the Program as a full course of study regardless of its official definition of full-time enrollment. Even viewed in the light most favorable to Plaintiff, the deposition transcripts and documents he cites do not support this contention.

In order to succeed in this argument, Plaintiff must first make out a prima facie case and show that: (1) he is a member of a protected class; (2) he was qualified to continue in pursuit of his education; (3) he suffered an adverse action; and (4) such action occurred under circumstances giving rise to an inference of discrimination. <u>Blunt v. Lower Merion Sch. Dist.</u>, 826 F. Supp. 2d 749, 758 (E.D. Pa. 2011) (applying the <u>McDonnell Douglas</u> factors to the education setting) (citing <u>Sarullo v. U.S. Postal Serv.</u>, 352 F.3d 789, 797 (3d Cir. 2003)), <u>aff'd</u>, 767 F.3d 247 (3d Cir. 2014).

7.   It is undisputed that at all relevant times Defendant had a policy to expel students who did not maintain a 2.0 GPA. Plaintiff did not maintain a 2.0 GPA. Therefore, he was not qualified to continue in the Program. Plaintiff argues that the discrimination began when Defendant imposed the nine-credit requirement on him. However, as discussed, this action was taken pursuant to federal law and cannot be imputed to Defendant. The relevant adverse action is Plaintiff's expulsion, not Defendant's enforcement of the credit requirement. Because the federal government set the requirements for the F-1 visa and Defendant has uniformly applied its definition of full-time enrollment for over thirty years, Plaintiff also cannot show that the adverse action occurred under circumstances giving rise

to an inference of discrimination. Therefore, Plaintiff fails to make out a prima facie case.

8. Even if Plaintiff could make out a prima facie case, he must show that Defendant's stated facially non-discriminatory reason for expelling him was a pretext for discrimination. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). This he cannot do. Defendant expelled Plaintiff for failing to maintain a 2.0 GPA and did not reinstate him because he failed to timely meet the requirements his professors set for him. Again, Plaintiff asserts that subjecting him to the nine-credit requirement in order to study on campus, merely because he was a foreign student, shows pretext. Again, other than to define full-time enrollment, which it was required to do, Defendant did not set the requirements for an F-1 visa. Plaintiff has provided no evidence of pretext such that a fact finder could reasonably either: (1) disbelieve Defendant's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of its action. Id. at 764.

9. For these reasons, the Court will grant the University's motion for summary judgment.

An appropriate order follows.